## W. A. WELSH v. THE STATE.

<div style="float:right">3   413<br>36  309,</div>

1. PETIT JURORS — CAUSE FOR CHALLENGE. — That a petit juror "has served
   as a juror for *one week* in the District Court within six months preceding,
   or in the County Court within three months preceding," is one of the causes
   for challenge provided by section 26 of the jury law of 1876.  *Held*, that
   the *one week* of previous jury service thus made cause for challenge is pre-
   dicated as well of the County Courts as of the District Courts; and, hence,
   previous jury service in the County Court for less than a week is not cause
   for challenge.

2. PRINCIPAL — ACCOMPLICES — ACCESSARIES. — The Penal Code of this state
   classifies offenders as either principals, accomplices, or accessaries.  The
   complicity of an accessary must have occurred after the commission of the
   offense, whereas the guilt of an accomplice is determinable by acts done
   before its commission; but both imply a principal offender.

3. SAME. — As the Code declares all to be principals "who are guilty of acting
   together in the commission of the offense," the inquiry whether an
   accused party is amenable as a principal is not determinable by what
   occurred before or after the commission of the offense.  But the "acting
   together" is not to be understood as restricted to the very fact of the per-
   petration of the crime; for those also are declared to be principals who,
   being present and knowing the unlawful intent of the actual perpetrator,
   aid him by acts or encourage him by words or gestures, and those who,
   though not personally present, keep watch to prevent his interruption, or
   procure means to assist him while engaged in its perpetration, or endeavor
   at the time to secure his safety or concealment.   See the opinion *in extenso*
   upon this subject.

4. SAME. — Note the facts of this case under which an employer is held
   amenable for the theft of a cow by his servants, committed in his ab-
   sence but under his general orders to take all cattle of a certain kind they
   could find.

APPEAL from the District Court of Victoria.   Tried below before the Hon. H. C. PLEASANTS.

The material facts are set forth fully in the opinion of the court.

The cattle inspector at Indianola happened to be agent for Garner, the owner of the cow in question, and, while inspecting the herd, recognized her by the brand as the property of Garner, and he informed the appellant she belonged to Garner, and told him to turn her out of the herd; but appellant replied that he had bought her in Goliad County, and she was his property.

In the opinion of the court will be found so much of the charge to the jury as need be stated.

The jury found the accused guilty, and assessed his punishment at three years in the penitentiary.

*A. B. Peticolas*, for the appellant.

*W. B. Dunham*, for the State.

WINKLER, J.   The first question presented in the record is set out in the bill of exceptions as follows:

"While the jury was being impaneled, defendant, by counsel, objected to a juror, one F. Schmidt, who was upon the list tendered him, for cause, to wit: because, within three months next before the trial day of this cause, said juror had served as a juror in the County Court for two days; which challenge for cause was overruled by the court upon the ground that said objection was not a good cause for challenge unless the juror had served for *one week* in the County Court, within the past three months; and the defendant was forced to challenge said juror peremptorily, and in the further progress of the trial of said cause entirely exhausted his peremptory challenges, and was forced, at the close of the forma-

tion of the jury, to take jurors he did not want, because of said ruling of the court.''

The correctness of this ruling depends upon the proper construction and application of the jury law of 1876 on the subject. The particular portion of the act necessary to be construed, and which sets out what shall be good cause for challenge, among others, is, '' that he has served as a juror for one week in the District Court within six months preceding, or in the County Court within three months preceding,'' shall be good cause for challenge. Act of 1876, p. 83, sec. 26.

We are of opinion that the proper construction of the clause in question is that the period of time set out as *one week*, being the only period mentioned, applies to both the District and County Courts. The language employed seems to indicate that one competent and liable to perform jury service is liable to perform that service for one week within the time specified for such service in the District Court, or for one week in the County Court within the time specified; the difference being that in the District Court the service can only be required once in every six months, whilst in the County Court he is liable to be called on to perform jury duty for one week within three months ; and that the word *preceding* refers to the term of the court at which the question arises.

It is manifestly one object of the act to equalize, in some degree at least, this service among those subject thereto. It can hardly be supposed that a juror having served for two days, or any less period than the time named in the statute, in the County Court, would excuse him when a greater length of time — namely, one week of service — is required in the District Court to excuse. Two days' service in the County Court within three months would not be equivalent to one week within six months.

The fact that the juror in question had, within the time

prescribed, served in the County Court for two days did not afford good cause for challenge, and the court did not err in overruling the objection raised against him by the accused.

It is insisted that portions of the charge of the court are erroneous. The precise portions objected to, together with the grounds of objection, cannot be more clearly or succinctly stated than by the following extract from the motion for a new trial:

" The charge of the court was erroneous in charging in this case that all persons were guilty as principals who acted together in the commission of the offense; because, if the state's evidence is true, the party placing the animals in herd was only Welsh's agent, and acting under his instructions. The court erred in the third instruction given, ' that, if an animal be taken from its range without the consent of its owner, by one person at the request or by the command of another, and the animal, when taken, be received by the person so commanding or requesting the taking, with the intent to deprive the owner of the value of the property and to appropriate the same to his own use or benefit, the person so receiving the property is, in judgment of law, as much the taker of the property as the person who actually did take it; ' which is erroneous because a charge upon the weight of evidence; because it is an instruction, in legal effect, that the principal may be criminally liable for the felonious acts of his agent done in his absence; and because said instruction is not applicable to the facts in proof, because the animal was turned into the herd in Victoria County, and received by the defendant in Calhoun County.''

The correctness or otherwise of these instructions must be tested by the law and the evidence, it being the duty of the court to charge the law applicable to the case as developed by the evidence adduced on the trial.

In the present case it is shown by the statement of facts,

first, that some time in October, 1875, the accused had a herd of cattle near the town of Victoria in the county of Victoria, on the road to Indianola in Calhoun County, and that he employed hands to drive the herd of cattle from where it then was, near Victoria, to Indianola; and a witness states that, when he and another hired hand arrived at the herd, the accused, Jesse Davidson, William Wall, John Keef, and one Miosgo were standing round the herd, when the accused, according to the witness, directed Davidson and Keef to go to the right of the road and gather cattle and drive them into the herd. The herd was moved along down the road, in the direction of Indianola, by Wall and Miosgo. The defendant, Wilson, a hand, and witness rode ahead of the cattle, on the road, for a short distance, when the accused told the witness to take Wilson and go to the left of the road and gather any cattle he could find in two certain brands described as V 2 and 7, and any up-country cattle the witness could find that were fat. The defendant directed witness and Wilson to gather the cattle and bring them on, and that he, the defendant, would go ahead to Indianola and make arrangements to ship or sell them.

The foregoing is substantially the situation of the parties and their connection with the herd, and the directions given by the accused as to the part to be performed by each one, at the time the herd was started from near Victoria on the route to Indianola.

2. The accused seems to have gone ahead of the others and the herd to Indianola, and Keef, Davidson, and Wall had charge of the cattle in the absence of the accused. The cattle were penned the first night on the way, and Indianola was reached the next day; and, when within a mile or two of Indianola, the party were met by the accused, who said he did not get a ship, but was going to sell to a butcher, and directed the cattle to be driven to the pen of the butcher, and assisted to pen the cattle, where it seems

they remained that night, and were kept on the prairie the following day until evening, when they were again penned at the butcher's pen, and were sold to the butcher. The number of cattle in the herd when it was started from near Victoria is placed by the evidence at twenty-five head, and when it reached Indianola it numbered seventy-five head — one witness says seventy-three.

3. Somewhere on the route a certain cow, branded 40, was placed in the herd, and she was driven to Indianola and there sold by the appellant. The cow branded 40 is shown to have belonged to one Jacob Garner, and for the theft of which the appellant, together with Jesse Davidson, John Keef, and William Wall, was indicted in Victoria County, and the appellant tried and convicted.

In this state of case, did the court err in giving to the jury the instructions complained of?

By the Penal Code those who offend against the penal law are divided into three classes, namely, principals, accomplices, and accessaries, and each class is defined in the Code, and examples are given by which the courts may be enabled to determine whether, under the evidence in each particular case, the offender belongs to the one or the other class.

When it is shown by the facts that an offense has been committed, and that the person accused conceals the offender, or gives him any other aid, in order that he may evade an arrest or trial, or the execution of his sentence, the relationship the person so aiding bears to the principal offender, and to the offense with which he stands charged, is that of an accessary, unless within the exceptions set out in the Code.

When an offense has been committed, and the person is shown by the facts not to have been present when the offense was committed, yet that before the act is done he advises, commands, or encourages another to commit the

offense ; or who agrees with the principal offender to aid him in committing the offense, though he may not have given such aid ; or who promises any reward, favor, or other inducement, or threatens any injury, in order to procure the commission of the offense ; or who prepares arms *prior* to the commission of the offense, for the purpose of assisting the principal in the execution of the same, he is in law an accomplice, subject, of course, to the exceptions and limitations and explanations given in the Code.

To render one liable as an accessary, his participation in the crime must have occurred *subsequent* to the commission of the offense, whilst the liability of an accomplice is to be determined from acts done *before* the commission of the offense ; and both necessarily embrace and include the idea of a principal actor or actors in the transaction out of which the inquiry arises.

As to principals, the definition given in the Code is this : "All persons are principals who are guilty of acting together in the commission of an offense." So that, in determining the question whether one accused of crime is liable as a principal or principal offender, the inquiry is not as to what occurred prior to the commission of the given offense or subsequently thereto, but, Did the parties act together? Were they guilty of acting together in the commission of the crime or offense charged? Did the person or persons involved in the investigation *act together* with others in the commission of the offense? If so, then he or they are, in law, principal offenders. It cannot be intended that the *acts* refer to the very *fact* of committing the offense, as it is sufficient, to charge one as a principal, if he is present and, knowing the unlawful intent, aid by acts or encourage by words or gestures those engaged in the commission of the unlawful act ; or who, not being actually present, keep watch so as to prevent the interruption of those engaged in committing the offense. Both those who are only present

and encouraging by words or gestures, or aiding by acts, as well as those not actually present, but who are connected with the offense by keeping watch for those who are engaged in the actual commission of the offense, are alike, in law, principal offenders. But not only so ; another illustration is this : All persons who shall engage in procuring aid, arms, or means of any kind to assist in the commission of an offense while others are executing the unlawful act, and all persons who endeavor, at the time of the commission of the offense, to secure the safety or concealment of the offenders, are neither *accessaries* nor *accomplices*, but are declared to be *principals*, and liable to conviction and punishment as such. Penal Code, art. 214 *et seq*. (Pasc. Dig., art. 1809 *et seq*.).

The true criterion in determining who are principals, it is believed, is, Did the parties act together in the commission of the given offense? Was the act committed in pursuance of a common intent? Was the particular crime committed in pursuance of a previously-formed design in which the minds of all united and concurred? If so, then all persons who were guilty of acting together in the execution of a previously-formed design, existing in the minds of all at the time the offense was committed, and actuating and prompting the actual perpetrator, then all so connected with the offense are principals, without reference to which one or more of the participants committed the offense, or at what particular stage of the proceeding, so that it was in pursuance of the previously-formed scheme, and during the existence and execution of the common intent.

" To hold a person liable there must be a combination of act and intent, in order to constitute crime. No amount of intent alone is sufficient ; neither is any amount of act alone sufficient. The two must combine." Yet, when intent and act combine, all so connected must necessarily be principals.

Mr. Bishop, volume 1, section 598, lays down this rule :

" When there are several acts, constituting together one crime, if each act is separately performed by a different individual in the absence of the rest, all are jointly principals as to the whole." This rule is illustrated by the case reported in the books, of a case of forgery. If several persons make distinct parts of the forged instrument, each one is a principal in the forgery, though he does not know by whom the other parts are executed, and though it is f nished by one alone, in the absence of the others.

As a further illustration of the position we maintain, we make the following additional quotations from the same writer. In treating the subject with reference to combinations of persons as respects the intent, he says :

" In the first place, if several combine both in intent and act, to commit a crime jointly, each is guilty, the same as if he had done the whole thing alone ; and so it is if he has his particular part to do, contributing to the general result. In the next place, since what a man does by his agent he does by himself, if one employs another to do a criminal thing for him, he is guilty, the same as though he had done the thing himself. Nor is his guilt the less if the agent does the act equally from his own desire or on his own account. * * * The principle that all whose wills contribute to a criminal result are in law guilty furnishes the leading test, sufficient, ordinarily, of itself to determine whether or not a person who did not himself perform a particular thing is to be held for it criminally." 1 Bishop Cr. Law, sec. 432.

These general principles and rules must be applied agreeably to the distributions made by the Code, as between principals, accomplices, and accessaries, as above stated.

We are of opinion that there was enough in the evidence on the trial to justify the court in giving the charge complained of, and that the court did not err in its charge to the jury in any material respect. On the contrary, the

charge appears to have been altogether correct, and it submitted to the jury the questions involved in an able, fair, and impartial manner, and the evidence is amply sufficient to support the verdict rendered.

One other proposition, discussed in the very able brief and oral argument of the appellant, remains to be considered, to wit: Had Victoria County jurisdiction of the case? It is shown by the statement of facts that there was a conflict in the evidence as to whether the cow was put into the herd in Victoria or Calhoun County. There is evidence on both sides of the question. This being the case, it was a matter for the consideration of the jury, and it having found in favor of the state's witness, whose evidence was clear and positive that this occurred in Victoria County, where the parties were indicted, agreeably to well-settled practice this court is not authorized to interfere.

After a careful examination of this case, as presented in the record, in the light of such authorities as we have seen, aided by the counsel, we find nothing to warrant us in disturbing the judgment; and it is affirmed.

*Affirmed.*